UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

S.B., a minor child, by and through his
Parents and Natural Guardians,
S.C.B. and J.L.B.-J,

      Plaintiff,

v.

Minnesota State High School League,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 21-2553 ADM/JFD

Charles K. Maier, Esq., and Brooke F. Robbins, Esq., Lathrop GPM LLP, Minneapolis, MN, on behalf of Plaintiff.

Joseph A. Kelly, Esq., Kelly & Lemmons, P.A., Saint Paul, MN, on behalf of Defendant.

## I. INTRODUCTION

The Complaint in this case was filed on November 23, 2021 [Docket No. 1]. On November 24, 2021, the undersigned United States District Judge heard expedited oral argument on Plaintiff S.B.'s Motion for Temporary Restraining Order or Preliminary Injunction [Docket No. 2]. For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

S.B. is a quarterback on Chatfield High School's ("Chatfield") varsity football team. Compl. ¶ 2. He seeks a temporary restraining order or preliminary injunction to enjoin Defendant Minnesota State High School League ("MSHSL") from enforcing a single-game suspension that causes him to be ineligible to play in the Minnesota Class AA State Championship football game on November 26, 2021. After he was ejected from the November 18, 2021 semi-final football game for receiving two unsportsmanlike conduct penalties, S.B. was

suspended from the championship game under MSHSL's Bylaws. Id. ¶¶ 10, 12, 14–15.[1]

S.B. disputes the unsportsmanlike conduct calls, arguing that he was not the instigator and that his conduct related to the second call was in reaction to the twisting of his ankle and to protect his own safety. Id. ¶ 13. However, MSHSL's Bylaws prohibit him from appealing the penalties or subsequent suspension. Specifically, MSHSL Bylaw 407.1 states that "[p]rotests against decisions of contest officials will not be honored," that "[t]he decisions of contest officials are final," and that "[v]ideo recordings will not be used to overrule an official's decision or change the outcome of the game, meet, or contest." Martens Decl. Ex. 1.

The Complaint asserts a single claim against MSHSL under 42 U.S.C. § 1983 for allegedly violating S.B.'s due process rights under the Fourteenth Amendment. S.B. alleges that MSHSL's Bylaws bar him from challenging his unsportsmanlike conduct penalties and automatic game suspension, and that MSHSL's enforcement of its bylaws deprived him of a property interest in the participation in interscholastic varsity athletics without due process of law. He seeks a temporary restraining order ("TRO") and preliminary injunction to enjoin the MSHSL from suspending him from the championship game until the misconduct penalties and subsequent automatic suspension can be reviewed by a neutral decisionmaker.

### III. DISCUSSION

**A. Legal Standard**

A TRO or preliminary injunction is an extraordinary remedy, and the movant bears the

---

[1] MSHSL Bylaw 206.4B(1)(c) provides that "[d]uring the League Tournament Series (Subsection, Section and State Tournament) . . . [a] student athlete who is ejected from a game . . . shall not participate in a game . . . for the remainder of that day. The student is also suspended from the next scheduled round of team or individual competition in that tournament series." Martens Decl. [Docket No. 13] Ex. 1 (MSHSL Official Handbook).

burden of establishing its propriety.  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).  A court considers four factors in determining whether a TRO or preliminary injunction should issue:  (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between the harm alleged and the harm that the relief may cause the non-moving party; (3) the movant's likelihood of success on the merits; and (4) the public interest.  Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  The likelihood of success on the merits need not be calculated with "mathematical precision."  Id. at 113.  "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Id.

**B. Analysis**

    **1. Status Quo**

As a threshold matter, the Court finds that the relief requested by S.B. would change, rather than preserve, the status quo.  Presently, S.B. is not eligible to play in the championship game.  S.B. asks that his eligibility be reinstated pending a review of his claim on the merits.  Accordingly, the requested TRO would alter the status quo prior to a trial on the merits.  This result would contravene the purpose of a TRO, which is to "preserve the status quo until the merits are determined."  Id.  Injunctive relief is not appropriate under these circumstances.

Plaintiff filed a reply memorandum [Docket No. 16] on Thanksgiving Day, the day following the oral argument and submission of the case for decision.  Defendant objects to the untimely filing.  Obj. [Docket No. 17].  The Court will not address the propriety of Plaintiff's reply memorandum because it does not advance S.B.'s case and the argument asserted in the submission is easily discarded.  The status quo is that S.B. is ineligible to play in the

championship game.  His status (and the status quo) switched from eligible to ineligible on November 18, when he was ejected from the game.  The suspension for the next game is a continuation of the penalty imposed in the semi-final game.  Plaintiff's argument that S.B. will only become ineligible if relief is denied is factually inaccurate.

### 2. Dataphase Factors

In addition to disturbing the status quo, the Dataphase factors weigh against issuing a TRO.  The Court addresses each of the factors below.

#### a. Likelihood of Success on the Merits

S.B. asserts a single claim against MSHSL under 42 U.S.C. § 1983 for allegedly violating S.B.'s due process rights under the Fourteenth Amendment.  Under the Due Process Clause of the Fourteenth Amendment, no state actor may "deprive a person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The MSHSL acts under color of state law when it makes eligibility determinations.  Brenden v. Indep. Sch. Dist. 742, 477 F.2d 1292, 1295 (8th Cir.1973).

To establish a procedural due process violation, S.B. must show:  (1) he has a life, liberty, or property interest protected by the Due Process Clause, (2) MSHSL deprived him of that interest, and (3) MSHSL did not afford him adequate procedural rights.  Stevenson v. Blytheville Sch. Dist. #5, 800 F.3d 955, 966 (8th Cir. 2015).

S.B. argues that he has a constitutionally protected property interest in participating in interscholastic athletics, and that this property right was taken from him without adequate process.  "Protected interests in property are normally not created by the Constitution.  Rather, they are created and their dimensions are defined by an independent source such as state statutes

4

or rules entitling the citizen to certain benefits." Goss v. Lopez, 419 U.S. 565, 572-73 (1975) (quotations omitted). Although an independent source such as state law creates a property interest, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." DeLaTorre v. Minn. State High Sch. League, 202 F. Supp. 3d 1046, 1055 (D. Minn. 2016) (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 757 (2005)) (emphasis in original) (quotation marks omitted).

The Minnesota Constitution created the right to a public education, and this right is a property interest that is protected by the Due Process Clause. Id.; Scott v. Minn. State High Sch. League, No. 16-4148 (MJD/HB), 2016 WL 7735565, at *5 (D. Minn. Dec. 27, 2016), report and recommendation adopted sub nom. Maki v. Minn. State High Sch. League, No. 16-4148 (MJD/HB), 2017 WL 114078 (D. Minn. Jan. 11, 2017). However, as noted by the court in DeLaTorre, "no statute, rule, or case . . . definitively includes eligibility for interscholastic varsity competition within the right to a public education under Minnesota law." DeLaTorre, 202 F. Supp. 3d at 1055.

Additionally, the decisions in this district addressing whether a property interest in interscholastic sports exists "are not uniform." Id. at 1056. Some decisions hold that no such right exists or that the right is not clear. See id. at 1056–58 (dismissing due process claim on motion to dismiss after examining cases and concluding that "[i]n the absence of a statute, regulation, or case that definitively includes eligibility for interscholastic athletic competitions within the right to a public education under Minnesota law, . . . the right to a public education . . . does not include eligibility for interscholastic varsity athletic competition"); Peterson v. Indep. Sch. Dist. No. 811, 999 F. Supp. 665, 674 (D. Minn. 1998) (dismissing due process claim on

summary judgment because "no property interest exists entitling plaintiff to due process before being excluded from extracurricular activities"); Scott, 2016 WL 7735565, at *6 (finding on motion for preliminary injunction that "the right to a public education under Minnesota law does not include eligibility for interscholastic varsity athletic competition"); H.R. ex rel. S.R. v. Minn. State High Sch. League, No. 13-16 (DSD/JJK), 2013 WL 147416, at *3 n.4 (D. Minn. Jan. 14, 2013) (stating "[i]t is unclear whether interscholastic athletic eligibility is a constitutionally-protected property interest" and denying motion for preliminary injunction on other grounds).

Other cases in this district have held that a plaintiff had a likelihood of establishing a constitutionally protected interest in participating in interscholastic sports. W.D. ex rel. M.J.D. v. Minn. State High Sch. League, No. 12-cv-2892 (JRT/SER), 2012 WL 5985514, at *4 (D. Minn. Nov. 29, 2012); J.K. ex rel. Kaplan v. Minneapolis Pub. Sch. (Special Sch. Dist. No. 1), 849 F. Supp. 2d 865 (D. Minn. 2011); Giblin v. Minn. State High Sch. League, No. 4-81-767, 1982 W.L. 963044 (D. Minn. Jan. 15, 1982). Notably, however, these decisions were decided in the context of motions for preliminary injunctive relief and not on the merits. Additionally, the plaintiffs in those cases were subject to season-long or year-long ineligibility from interscholastic athletics, rather than the ejection and one-game suspension at issue here.

Assuming arguendo that S.B. is entitled to a public education that includes participation in interscholastic athletics, he has not been denied a property right protected by the due process clause. "[T]he property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process." Stevenson v. Blytheville Sch. Dist. # 5, 800 F.3d 955, 968 (8th

Cir.2015) (quoting Mazevski v. Horseheads Cent. Sch. Dist., 950 F.Supp. 69, 72 (W.D.N.Y.1997)). S.B.'s ejection and one-game suspension still allows him to remain on the football team, engage in school activities, and participate in all interscholastic athletics except the next scheduled game in the tournament series. Because S.B. cannot establish that he has been deprived of a protected property interest, he is unlikely to succeed on the merits of his due process claim.

Even if S.B. could show a constitutionally protected property interest, he was afforded adequate process based on the demands of the situation. "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" Clark v. Kansas City Missouri Sch. Dist., 375 F.3d 698, 702 (8th Cir. 2004) (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). When a MSHSL official ejects a player from a game, the official reviews the decision with the entire officiating staff both at the time the penalty is called and after the game to ensure it has been appropriately applied, including verifying the identity of the player. Martens Decl. ¶ 13.

S.B. argues that a player should be allowed to appeal unsportsmanlike conduct penalties and have them reviewed by a neutral decisionmaker. However, the decision to issue unsportsmanlike conduct penalties is a judgment call best left to the discretion of the contest official or referee on the field. Although the MSHSL has identified certain plays that are subject to video review during state semi-final and championship games, the plays which are subject to review involve objective criteria, not a subjective judgment call which is implicit in an unsportsmanlike conduct penalty. Even the reviewable plays are limited to narrow circumstances in which a play may affect the outcome of the game. See id. Ex. 2 (2021 Instant

Replay Policy and Protocol). Accordingly, a logical reason exists for not applying video replay review to unsportsmanlike conduct penalties. Additionally, although MSHSL Bylaw 206.4.C. permits a basketball coach to appeal an ejection penalty, this exception applies only if the basketball coach is held responsible for the conduct of team members and assistant coaches on their bench, and does not apply when a basketball coach's own conduct contributed to the disqualification. Martens Decl. Ex. 1. Accordingly, S.B.'s process was adequate in light of the demands of the particular situation.

Because S.B. has not shown a likelihood of success on the merits, this factor weighs against injunctive relief.

### b. Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). S.B. has demonstrated the threat of irreparable harm because money damages would not adequately compensate the loss of an opportunity to play in a state championship game. Cf. W.D. ex rel. M.J.D., 2012 WL 5985514, at *4 ("[T]he harm of losing a year of varsity eligibility is difficult to quantify and would constitute irreparable harm."). Therefore, this factor weighs in favor of injunctive relief.

### c. Balance of Harms

"[A] court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998). S.B. has established a possibility of irreparable harm in the

absence of injunctive relief. However, S.B.'s suspension from instrascholastic activities is limited to a single game, rather than a season or school year. Although the game is an important one, S.B. remains on the varsity football team and will be eligible to compete in varsity competitions after serving his one-game suspension.

The Court must balance this harm against MSHSL's interests in enforcing its Bylaws. Reinstating S.B. before a trial on the merits would allow him to bypass the MSHSL's application of its Bylaws and reduce the MSHSL's ability to enforce its own rules. Requiring the MSHSL to engage in an evidentiary hearing whenever a student-athlete is ejected would impose a significant and unreasonable burden given the volume of competitions and decisions by contest officials each year. Further, as discussed above, judicial intervention in this matter will alter, not preserve, the status quo. As a result, the balance of harms weighs against injunctive relief.

### d. Public Interest

S.B. argues that the public interest weighs in favor of protecting the deprivation of constitutional rights until the matter can be litigated on the merits. However, as already explained, S.B. has not established a substantial likelihood of success on the merits of his constitutional claim. Therefore, this <u>Dataphase</u> factor weighs against entry of injunctive relief.

Accordingly, based upon a balancing of the <u>Dataphase</u> factors, only irreparable harm favors the Plaintiff. Therefore, a TRO is not warranted.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff S.B.'s Motion for Temporary Restraining Order [Docket No. 2] is **DENIED**.

BY THE COURT:


 s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated: November 26, 2021